**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIDGET FESTA,  Plaintiff,  v.  WILLIAM JORDAN, et al.,  Defendants. | CIVIL ACTION NO. 3:09-CV-2240  (JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is Defendant Paul Ware's motion for summary judgment on the plaintiff's claims. (Doc. 43.)

This action arises out of the events allegedly taking place on May 13, 2008. In her complaint, Bridget Festa alleges she was in her car, pulling away from her home in Scranton, Pennsylvania, when she noticed Dunmore police cars following her. Several blocks later, they pulled her over, pointed guns at her, instructed her to lay face down on the ground, and searched her car. After being told her children would be taken from her if she did not consent to a search of her home, she relented and permitted the search. She alleges she was locked into a police cruiser, taken to the station, interrogated without an attorney present and against her will, and had her property taken and destroyed.

Bridget Festa filed her amended complaint against five Borough of Dunmore police officers and Paul Ware, an assistant district attorney for Lackawanna County. She brought constitutional claims under 42 U.S.C. § 1983, claiming that the defendants violated her

1

Fourth Amendment rights to be free from unreasonable searches and seizures and her Fourteenth Amendment right to due process of law. She also brought state common law claims of intentional infliction of emotional distress and false arrest and imprisonment. The police officers subsequently settled the claims against them, so Ware is the only remaining defendant.

Ware moves for summary judgment in his favor. (Doc. 43.) The only specific allegations of misconduct against Ware in the amended complaint are that he agreed with the police officers that they should stop, search, and seize Festa. Ware claims that no evidence supports these allegations and submits evidence that he simply provided the police with information that Edward Coss may have been located at Bridget Festa's home. The police had a warrant for Coss's arrest, and Ware argues that he had a reasonable basis to provide this information to the police.

Ware argues that Festa's claims cannot withstand summary judgment. As to the federal claims, Ware invokes the affirmative defense of absolute immunity. As to the state law claims, he invokes immunity under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8501 and Pennsylvania common law. The defendants filed their opposition to the motion, but have withdrawn the intentional infliction of emotional distress claim. The motion is ripe for review.

**I. Background**

Paul Ware was a Deputy District Attorney for Lackawanna County. (Def. Statement of Material Facts (SOF) ¶ 1; admitted Pltf. SOF). Claire Festa had known Paul Ware since high school and he handled all her legal affairs. (Pltf. SOF ¶ 1; not controverted by Def.) At some point before May 13, 2008, Claire Festa contacted Ware to notify him that she

believed that Edward Coss, whom she heard was sought by the police, might be at the home of her daughter, Bridget Festa. (Def. SOF ¶ 4; admitted Pltf. SOF.)

On May 13, 2008, the Dunmore Police Department had a warrant to arrest Coss. (Def. SOF ¶ 3; admitted Pltf. SOF.) Ware called Dunmore Police Officer William Jordan to say he had information that Coss might be at Bridget Festa's house. (Def. SOF 5; admitted Pltf. SOF.)

At some point on May 13, several Dunmore Officers stopped Bridget Festa, searched her vehicle and home, and questioned her. Precisely what happened with respect to the searches and questioning is in dispute, but is not material. In his briefing, Ware does not argue that Festa did not suffer constitutional injuries. His only bone of contention is that there no evidence connects him to the actions of the Dunmore officers such that liability can be imposed on him.

This is where the plaintiff disagrees. While Ware claims he was not present at the scene of the vehicle search, (Def. SOF ¶ 15), the plaintiff points out that Ware testified he went to Heil's bar—the scene of the search—after having learned from a Dunmore officer by phone call that the car was there. He arrived after the search was conducted and while the vehicle was still in Heil's parking lot. (Pltf. SOF ¶ 15; Ware Dep. 29-30.)

Ware contends he was not involved in the search of Festa's home, but the plaintiff notes that Ware's own testimony reveals he was present during the search and was standing in the driveway of his assistant's parent's home, which was in a driveway on the other side

3

of the street.[1] (Ware Dep. at 63.) Additionally, Clare Festa testified that Ware spoke with her before the searches because he wanted to be sure that her grandchildren would not be present at Bridget Festa's residence. (Claire Festa Dep. at 16.)

Ware claims that he was present on the scene because if Edward Coss were found, he wanted to be present. (Ware Dep. at 19.) He denied that he was advising the police officers, (*id.* at 20), but agreed that in his role as assistant district attorney he is frequently at the scene of arrests to advise the police because district attorney approval is necessary to file felony charges, (*id.* at 22).

## II. Discussion

As noted above, whether underlying constitutional violations occurred is not at issue in this motion.[2] On the § 1983 claims, Ware moves for judgment solely on the basis of whether, assuming a constitutional violation was committed, he can be held liable.

In their briefing, the parties argue past each other. Ware argues that he cannot be held liable on a theory of supervisory liability. The plaintiff primarily argues that Ware can be held liable on a theory of failure to intervene and civil conspiracy. Because Ware only moves for summary judgment on the § 1983 claims on the basis that no evidence supports imposing supervisory liability, the Court will only address this issue. Because the plaintiff has

---

[1] In her statement of material facts, at paragraph 19, Festa claims that Ware was "directly across the street." This mischaracterizes the deposition testimony, which simply states that Ware was "in the driveway across the street." Ware contends that the driveway was across the street and down the block. There appears to be no dispute, however, that Ware was quite close to the scene and was there because of the searches and not by happenstance.

[2] This is not to say that the parties *agree* that an underlying constitutional violation occurred, simply that Ware is not moving for summary judgment on the basis that there was no underlying violation. Instead, he limits his arguments to the issue of whether, *assuming* the Dunmore officers violated the plaintiff's constitutional rights, liability can be imposed on him.

4

introduced sufficient evidence to support a finding of supervisory liability, summary judgment on this issue must be denied. Because Ware is not entitled to immunity, judgment as a matter of law on liability must be denied. Ware further argues that he cannot be found liable for false imprisonment. The Court agrees and will grant his motion for judgment on this claim.

**A. Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the

nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)).  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."  *Id.* (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B. Supervisory Liability**

While the Third Circuit has "expressed uncertainty as to the viability and scope of supervisory liability" after the Supreme Court's decision in *Ashcroft v. Iqbal, see Argueta v. U.S. Immigration & Customs Enforcement*, __ F.3d __, No. 10-1497, 2011 2315125, at *8 (3d cir. June 14, 2011) (internal citations omitted), for purposes of this motion, the continued validity of imposing liability on a supervisor will be assumed.

There is no *respondeat superior* liability in the § 1983 context; a defendant must have personal involvement in the alleged wrongs for liability to attach. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *Id.; A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowldge of and acquiesced in his subordinates' violations"). Actual knowledge "can be inferred from circumstances other than actual sight." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995). Acquiescence is found "[w]here a supervisor[3] with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120

---

[3] Ware does not argue that the Dunmore officers were not his subordinates; because Ware argues against supervisory liability on the sole ground that there was no evidence that he participated in or knew of the constitutional wrongs, the Court assumes without deciding that they were.

F.3d 1286, 1294 (3d Cir. 1997).

The defendant claims that there is "a complete lack of evidence" that Ware directed, supervised, or approved of the police searches and seizures. The Court disagrees. The plaintiff has introduced circumstantial evidence from which a rational juror could draw the conclusion that Ware either directed, or knew and acquiesced in, the searches and seizures. First, Ware notified the police that Coss might be with Festa. Second, he expressed a desire that Festa's children not be present at the house. Third, he was actually present at the scene of the completed car search after receiving a phone call from an officer. Fourth, he was present at the search of Festa's home, even though how close he was is in dispute.

This is more than a scintilla of evidence from which a juror could disbelieve Ware's claims that he did not direct the officers. After all, Ware admitted that he frequently advises police, at least two phone calls between him and Dunmore officers were made, he acted to ensure that no children were in the house, and he was present at the scene. His mere presence at the scenes of the searches, moreover, plausibly suggests actual knowledge and acquiescence in the events that occurred.

For this reason, summary judgment on the grounds that supervisory liability cannot be imposed on Ware will be denied.

**C. Absolute Prosecutorial Immunity**

Ware argues that the plaintiff's federal claims are barred by absolute prosecutorial immunity. The plaintiff contends that because Ware's acts were not associated with the judicial phase of criminal proceedings, he is not entitled to absolute immunity.

When considering § 1983 claims, federal courts apply absolute immunity to certain "special functions." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (internal citations

omitted). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 269. In applying this functional approach, courts look "to the nature of the function performed, not the identity of the actor who performed it." *Id.*(internal citations omitted).

State prosecutors are entitled to absolute immunity for conduct that is "intimately associated with the judicial phase of the criminal process." *Id.* at 270 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). When a prosecutor initiates a prosecution and presents the State's case, he is absolutely immune from claims for money damages for these acts. *See id.* (citing *Imbler*, 424 U.S. at 431 & n.33; *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) ("[S]tate prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role.")). Acts of investigation or administration, however, do not receive absolute immunity. *Buckley*, 509 U.S. at 270.

Thus, the Supreme Court has held that giving legal advice to the police on whether probable cause to arrest existed and whether a suspect could be hypnotized are not acts entitled to absolute immunity. *Burns v. Reed*, 500 U.S. 478 (1991). Thus, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Buckley*, 509 U.S. at 273 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).

Here, Ware has failed to show that any of the alleged searches and seizures of Festa were so "intimately associated" with the judicial phase of criminal proceedings. Thus, absolute immunity is not warranted, and summary judgment on this ground will be denied.

**D. False Imprisonment**

In his briefing, Ware's entire argument for judgment in his favor on the false arrest and imprisonment claim is one sentence: "[c]learly, Plaintiff has no evidence to support a claim of false imprisonment against Paul Ware." The plaintiff disagrees and seeks to impose liability on the basis that there was a civil conspiracy. Because the plaintiff has the burden of proof to show a civil conspiracy, the Court must ascertain whether she has introduced sufficient evidence on each element of this claim to survive summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that the moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case").

A predicate to any civil conspiracy claim is the presence of an underlying tort. *See McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (citing *Boyanowsky v. Capital Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000)). The plaintiff argues that the defendants committed the tort of false imprisonment, and that Ware conspired with them to do so. Thus, the Court will first consider whether there is sufficient evidence from which a factfinder could find that Festa was falsely imprisoned. Because there is, the Court will next consider whether Festa has introduced sufficient evidence from which a jury could find that Ware conspired with the officers.

"The elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). The plaintiff claims to have been falsely imprisoned when she was taken to the station for questioning.

10

Of course, no false imprisonment existed if the plaintiff consented to the confinement. Consent is an affirmative defense which must be pleaded and proved by the defendant. *See McCabe v. Village Voice, Inc.*, 550 F. Supp. 525 (E.D. Pa. 1982) (citing Restatement (Second) of Torts § 892). The defendant points to no evidence that the plaintiff consented to being detained, and the plaintiff has introduced evidence suggesting that she was coerced by being told that her children could be removed if she failed to cooperate. (Bridget Festa Dep. at 177.) Because the defendant has failed to show that the defendant consented, there is a triable issue of fact as to whether Festa was falsely imprisoned. The only remaining question is whether the plaintiff has introduced evidence showing Ware's involvement in a civil conspiracy sufficient to withstand summary judgment.

Under Pennsylvania common law, a civil conspiracy requires that two or more conspirators reached an agreement to commit an unlawful act or perform a lawful act by unlawful means. *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979); *Burnside v. Abbott Laboratories*, 505 A.2d 973, 980 (Pa. Super. Ct. 1985). Additionally, a plaintiff must show an overt act and actual legal damage. *Phillips v. Selig*, 959 A.2d 420 (Pa. Super. 2008) (internal citations omitted). Finally, "[p]roof of malice, *i.e.*, an intent to injure, is essential in proof of a conspiracy." *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 143 (quoting *Thompson Coal Co.*, 412 A.2d at 472). "Malice requires . . . that the *sole* purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification. *Doltz v. Harris & Assoc.*, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003) (emphasis added). Because malice can only be found when the *sole* purpose of the conspiracy is to injure the plaintiff, a showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice. *See Bro-Tech Corp. v.*

11

*Thermax, In.c*, 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009); *Thomson Coal Co.*, 412 A.2d at 472 (noting that the intent to injure must be absent justification, which cannot exist when an act is merely done "with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights") (quoting *Rosenblum v. Rosenblum*, 181 A. 583, 585 (1935)).

Thus, to survive summary judgment, a plaintiff bringing a civil conspiracy claim must produce evidence to establish that the defendant acted in concert to commit an unlawful act or do a lawful act by unlawful means, and he acted with malice. *Commerce Bank*, 911 A.2d 133, 143 (citing *Skipworth by Williams v. Lead Indus. Ass'n*, 690 A.2d 169, 174 (Pa. 1997)). The elements of civil conspiracy may be proven circumstantially, so long as the evidence is "full, clear and satisfactory." *Rumbaugh v. Beck*, 601 A.2d 319, 327 (Pa. Super. Ct. 1991) (internal citations omitted).

Here, the plaintiff points to no facts in the record indicating that Ware acted *solely* to injure her, and thus has failed to show malice. While Ware notified the police that Coss might be at Festa's home, this was done with legal justification because as an assistant district attorney, he had a legitimate professional interest in apprehending Coss. While Ware was present during some of the events of the day, he testified that he was present in the event that Coss was arrested. As an assistant district attorney, his presence was with a legitimate professional reason and was thus justified. The record suggests that Ware's purpose of involving himself with the police was to apprehend Coss; thus, there can be no finding that Ware acted with the *sole* intent to injure Bridget Festa. Without "full, clear, and satisfactory" evidence showing the essential element of malice, summary judgment must be granted in Ware's favor on this claim. *See Lackner v. Glossser*, 892 A.2d 21, 35 (Pa. Super.

Ct. 2006) ("Absent the essential element of malice, it was proper for the trial court to grant summary judgment on the civil conspiracy count.").

Because summary judgment will be granted on the state-law false imprisonment claim against Ware, and the plaintiff has withdrawn the intentional infliction of emotional distress claim, there are no remaining state-law claims against Ware. Thus, the Court need not consider Ware's argument that he is entitled to immunity on the state law tort claims.

### III. Conclusion

For the reasons explained above, the defendant's motion for summary judgment will be denied in part and granted in part.

As to the civil rights claims brought under § 1983, the defendant's motion for summary judgment will be denied.

As for the false imprisonment claim, the defendant's motion for summary judgment will be granted. The intentional infliction of emotional distress claim has been withdrawn. Thus, only the § 1983 claims remain.

An appropriate order follows.

July 25, 2011                                             /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIDGET FESTA, | |
| Plaintiff, | NO. 3:09-CV-2240 |
| v. | |
| | (JUDGE CAPUTO) |
| WILLIAM JORDAN, et al., | |
| Defendants. | |

## ORDER

**NOW**, this 25th day of July, 2011, **IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Doc. 43) is **DENIED** as to the § 1983 claims and is **GRANTED** as to the false imprisonment/arrest claim. The intentional infliction of emotional distress claim is deemed **WITHDRAWN**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge